# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1363

_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Melvin Vinson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 23, 2015
Filed: November 18, 2015

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

A St. Cloud police officer stopped a white SUV driving in her direction shortly after a reported shooting. During the stop, two handguns were seized from the SUV. Kenneth Vinson moved to suppress the evidence. The magistrate judge[1]

_____

[1]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

recommended that the motion be denied, and the district court[2] so ordered. Vinson then entered a conditional plea of guilty to the charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), reserving his right to appeal the denial of his suppression motion. Vinson now appeals, and we affirm.

On February 2, 2014 police officer Christina Zabrocki received a report of a shooting not too far from the location of her squad car by a suspect driving a white Buick. While Zabrocki began driving towards the shooting site with her lights and siren on, the dispatcher reported that the suspect's vehicle was a white SUV. Shortly thereafter, Zabrocki saw a white SUV driving towards her. She slowed her vehicle as the SUV passed and saw the occupants staring back at her. Zabrocki made a U-turn to follow the SUV which first failed to stop but eventually turned into a parking lot.

Zabrocki and fellow officers ordered the three occupants to exit the SUV and placed them all in handcuffs; one of the suspects was Kenneth Vinson. The officers proceeded to inspect the SUV to determine if there was anyone still inside it. One of the passengers had left the rear passenger door open while exiting. When Officer Nicholas Carlson crouched down to look through the open door, he saw a handgun underneath the front passenger seat. Sergeant Laurie Ellering later testified that she had also been able to see the handgun from her position standing next to Officer Carlson outside the SUV. After the first weapon was found, all three passengers were placed under arrest. A search of the vehicle revealed a second handgun tucked into the back seat cushions.

The magistrate judge recommended that Vinson's motion to suppress the weapons be denied after concluding that Zabrocki had had reasonable suspicion to

---

[2]The Honorable Michael J. Davis, then Chief Judge, United States District Court for the District of Minnesota.

stop the SUV and that the plain view search was constitutional. The district court agreed, and Vinson entered a conditional plea of guilty to the charge of felon in possession of a firearm. He now appeals the denial of his motion to suppress. We "examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999).

Vinson argues that Zabrocki improperly stopped the SUV on a mere hunch and did not have a sufficient factual basis to support a reasonable suspicion of wrongdoing. An investigative stop is proper if a police officer "has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotation marks omitted). Specifically, Vinson argues that Zabrocki lacked reasonable suspicion because the dispatcher had initially reported that the suspect vehicle was a white Buick. However, the vehicle matched the second police radio description of the suspect's vehicle (a white SUV) and Zabrocki had seen such a SUV driving away from the shooting scene three minutes after the initial report. These facts are similar to those in United States v. Juvenile TK, 134 F.3d 899, 902 (8th Cir. 1998), where we concluded that an officer had reasonable suspicion to stop a vehicle matching a police report because it was close to the scene of the crime and was observed five minutes after that report. We conclude that the stop of the SUV in this case was supported by the personal observations of Officer Zabrocki which provided her with reasonable suspicion of wrongdoing.

Vinson next argues that Officer Nicholas Carlson's seizure of the handgun underneath the front seat did not fall within the plain view exception to the Fourth Amendment's warrant requirement. An object may be seized by the police without a warrant under the plain view doctrine if "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,

-3-

(2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003) (internal quotation marks omitted). Vinson argues that after all the suspects exited the SUV, Carlson did not have authority to look inside it.

Once an officer has lawfully stopped a vehicle, however, he can approach it even if all the occupants have been removed. United States v. Beatty, 170 F.3d 811, 814 (8th Cir. 1999). Carlson did not violate the Fourth Amendment by bending down from outside the SUV's rear door to look inside after all the occupants had exited. Vinson additionally argues that Carlson's upper body had unlawfully entered the vehicle as he tried to look under the front seat without a warrant. We review the district court's finding that Carlson remained outside the vehicle for clear error. See Neumann, 183 F.3d at 755. Our review of the record, including the video from the camera on the squad car dashboard, does not show Carlson entering the SUV at the time he looked through the rear back door to see under the front seat. The district court's finding that Carlson saw the handgun from a position outside the vehicle was not clearly erroneous. Thus, the district court did not err in concluding that Officer Carlson's seizure of the handgun underneath the front seat fell within the plain view exception to the warrant requirement.

For these reasons we affirm the judgment of the district court.

_____